This time we'll hear Cruz-Ramos v. Sessions. Good morning, Your Honor, I'm a little short. You can lower that if you like, but I'm good now. Thank you. The microphone is enough. Good morning. May it please the Court, Ann Dobler for the petitioner, Gregorio Cruz-Ramos. Your Honors, we're here today on a case that was once before the Court previously. It was remanded to the Board of Immigration Appeals where they issued a new decision, again giving little reasoning to the petitioner as to why his affidavit requesting a hearing was insufficient before the immigration judge. The Respondent's case primarily involves a vehicle stop by a marked Border Patrol vehicle with no local law enforcement, no traffic tickets, no criminal charges, no allegations of any wrongdoing beyond his being- The Border Patrol couldn't give a ticket for a violation. I don't believe so, Your Honor, under New York State law that he had any authority to do so. So the absence of one does neither here nor there. Thank you, Your Honor. I'm just not sure that the government might be in agreement with that petition, but- Your Honor, the Respondent's affidavit asserted that he believed he was stopped because he was driving while Hispanic. Is that enough to make a prima facie case sufficient to command a hearing? Your Honor, I think that that statement alone in and of itself might not be enough, but with all of the circumstances considered in the affidavit, together it is. So what else? Your Honor, he also indicated that he had not disobeyed any traffic laws- He believed he did. Believed he didn't disobey any traffic laws, was simply driving, and was pulled over by a marked Border Patrol vehicle, felt he had no ability to leave, that he was definitely not free at that point when his car was stopped. So Your Honor, I guess my position is that before the officer talks to the individual in the vehicle, when they make that decision to stop it, a person in Mr. Cruz-Ramos' position doesn't know what's in the mind of the Border Patrol officer, doesn't know if the Border even through discovery to find that out, unlike a criminal trial, and the only thing he can do is put before an immigration judge what he knows. Isn't there more that he could have affirmed in this case that it's not in his affidavit? I mean, he had access to the form I-213, which says that there was a marked Border Patrol unit and that he attempted to evade it, and yet there's no allegation in the affidavit that I didn't attempt, I didn't see any marked Patrol unit and I didn't attempt to evade one. Your Honor, I would disagree. I believe the affidavit indicates that the respondent was simply driving in a regular manner, that there was no effort to invade. I don't think the, I think the affidavit- He says he doesn't believe he committed, I mean, maybe I'm misremembering, so help me if I'm misremembering the record, but he says he doesn't believe that he committed any traffic violations, but it doesn't say I did not attempt to evade Border Patrol. Well, Your Honor, I don't think there's any allegation that there was an attempt to evade. Even the first time the matter was before the court, we all, myself, government, judge, we're all relying on the I-213 and the facts in the I-213. I don't think there's an attempt to evade in those facts, the Border Patrol officer followed him for close to two hours, waited while he had lunch. He followed him for two hours? Waited while he had lunch. I don't know that there's an attempt to evade even expressed in the I-213, Your Honor. To whom was the vehicle registered? To the, Your Honor, I apologize, I'm not 100% sure. I believe it's the petitioner who's the owner and registered owner of the vehicle. I don't honestly know. We didn't get to any point of a factual hearing. So if the question is, could the affidavit taken as true support of finding that he was stopped because he was Hispanic, the fact that his name is Guillen Jimenez and that the vehicle was registered in his name is at least some circumstantial evidence that he was stopped on that basis because it's perhaps reasonable to suppose that the Border Patrol ran the plate. Maybe they didn't. Maybe if there's a hearing, we find out they didn't run the plate, but what about that? Your Honor, I would argue that the respondent's name in addition to his appearance, again, isn't an indication that he is illegally present in the United States, but certainly potentially an indication of his ethnicity. And you're relying on ethnicity here. Yes, Your Honor. Thank you. What I'm having trouble understanding is why can't anyone who is stopped say, I want to suppress the information concerning my status that was acquired when I was stopped because I don't think I did anything wrong and I am of this ethnicity or that race? Well, Your Honor. Because that's basically all there is, and if that is so, why isn't there a hearing in every case? Well, Your Honor, I think that there's a, first of all, this is, in particular, a vehicle stop, not a consensual street encounter or a house or a place of employment or anything else. It's an individual driving a vehicle and under the Constitution. How does that make it? You could say I was walking down the street minding my own business and I am of this race or that ethnicity or whatever it is, and I don't know why I was stopped, and I therefore believe it is based on race or ethnicity. And then you get a hearing? Your Honor, I think in the context of an immigration proceeding, that the Constitution protects you from an illegal seizure. If you're the person being seized, you should be entitled to. Yeah, but you're not entitled to suppression in an immigration case except under egregious circumstances which are held to be egregious and rare. Is the fact that he's Hispanic and not somebody whose ethnicity is Scots-Irish relevant for this purpose? Your Honor, I would argue that it's relevant because going back in the Border Patrol's history before the Supreme Court case that first talked about a vehicle stop, Border Patrol thought they could stop people without regard, that they could stop them based on issues like ethnicity. They actually argued in that case that it was a proper basis and the court said, no, it doesn't matter that you're an immigration officer. You can't stop someone just because of their ethnicity. But the question is, how much do you have to allege to trigger a hearing on this issue? Your client alleges, I was driving within the speed limit, did not believe that I had violated any traffic law, but he doesn't allege anything and maybe you say he doesn't have to. There are specific allegations in the I-213 that he might have taken issue with. For instance, it says the driver of the vehicle was observed watching the marked Border Patrol unit in his rear view mirror intently enough that he nearly wrecked into another vehicle and stopped at the red light. He could have specifically denied that he was doing that. Well, Your Honor, he did specifically deny that. He specifically said he was driving in a normal manner. Driving in a normal manner doesn't sound very specific to me. It doesn't say normal manner. It says I did not feel as though I could drive away, well, I was driving within the speed limit and did not believe that I violated any traffic laws. I suppose you could have nearly rear-ended somebody without violating a traffic law. Your Honor, I guess my, I don't know how we get to the facts in the I-213 or how my client makes a statement like that when he doesn't, it's not even a point of reference for him. He doesn't know he's been followed. He doesn't think there's anything unusual about his driving. I'm just trying to understand the proceeding, but he does have access to the allegations in the I-213s. Yes, Your Honor. Am I correct about that? So he could have, you could have taken issue with anything that was in there more specifically than is done in the affidavit. Potentially, Your Honor, although I'm limited to what's within my client's personal knowledge. I mean, if he doesn't have any memory of. He's trying to suppress the evidence of his, of his ethnicity or his, his, his status in this country. His alienage. His alienage, which is based upon this document and this document says why, at least alleges why the border patrol stopped him. Yes, Your Honor, except that in, in the first time this matter was before the court, we, there was rather extensive underlying argument in regards to the- I remember. We were both there. In regards to the I-213, which then there was a determination that we shouldn't rely on that. So we went to what was strictly within my client's affidavit, but my client's affidavit has to be based on his personal knowledge. If he didn't feel there was almost an accident, I don't know how, how he says much more than what he said in his affidavit, that I was driving, I was obeying the traffic laws, I was- Accepting that as, as so, then you would have to concede that you don't really need to say very much at all in order to make out a prima facie case sufficient to get a hearing. Correct? Your Honor- I was walking down the street, minding my own business, and I was stopped by the border patrol, and I am of this ethnicity or of that race, and I, and I think that's why I was stopped. According to you, that would be enough. Well, Your Honor, I would argue that there, there, there, there's more to it. He said there was nothing, that his driving was within the law, that there was nothing unusual about his driving. Minding my own business, and I didn't cross against the light. Look, let, let me come back to the question I asked you before, if I may. I wonder whether there isn't a case for the proposition, given the history of animus against illegal immigrants from Hispanic countries, which has been on full view in the last year in a variety of ways, but long antedates it, and against possibly one or two other groups that we could mention. Is there a case for the proposition that people from those extractions are maybe in a somewhat different position about what a sufficient affidavit looks like than people of white Anglo-Saxon, Northern European extraction? I think they are, Your Honor, because I, I, I believe that race is something that was considered in the stop of this gentleman's vehicle, because nothing else in the stop of the vehicle or the I-213, if you look at it in its completeness, indicates why they were stopped. If you wait for a person to have lunch, I don't think there's an issue about evasion, if we're going to go to the, to what's in the I-213. If you follow a person around, and you're desperately waiting for something to happen, so hopefully you can pull over their car, so, you know, but you've been doing this for a while now, oh gee, finally they make, oh, that turn was a little quick, I think I'm going to pull them over. I, I, I think that somewhere a person has to have an ability to get into a court and, and find out why, and, and the only way to do that is through a hearing for, for this issue. But as you know, the Supreme Court has said that these hearings are supposed to be, they're, they're not criminal trials, they're not going to, they're supposed to be expeditious and, and be able to go forward with minimal delays, and as my colleague says, in any case in which a car is stopped, and help me understand what this, the scope of the rule that you're urging, in any case in which a car is stopped, then it seems to me if the allegation is made that I believe I was stopped on the basis of my race, and I don't remember violating any traffic laws, you'd have to have a hearing in that case. Well, Your Honor, the government would have to potentially allow the respondent to testify. He could then be cross-examined and, and ask questions. But Mr. Miller, there's more to it than that in this case. There's more to it because you've got the Border Patrol following this guy for two hours in a vehicle registered in the name of Guillen Jimenez. So why isn't it reasonable to infer that the Border Patrol agent knew he had a Hispanic, knew that there are probably millions, but in any case, lots of illegal persons, that is to say, non-documented aliens who are Hispanic in origin, and there's more to that case than I see this guy walking down the street, I think I'll pull him over. I would agree. I think there's a lot more than simply a vehicle driving issue. I would also argue in regards to the Lopez-Mendoza decision that, first of all, INFs no longer exist. It's now the Department of Homeland Security. We remove or deport from the United States, between President Bush and President Obama, I think close to 4 million people. In the 100 years or more before that, I don't even think we remotely approached that. I think that the immigration law in 1984 when Lopez-Mendoza was decided and the immigration law in 2011 when Mr. Cruz Ramos was subjected to the vehicle stop are really different. And the immigration court process is really different. Well, I mean, if we're going to get into what our immigration policy ought to be, we're going to be- Not asking for money. We're going to be below our pay grade. So if you've reserved some rebuttal time and we'll hear you then. Yes, sure. Good morning. Good morning. May it please this court, my name is Andrew Oliveira. On behalf of the respondent, the Attorney General, Jefferson B. Sessions III. The only issue that we are here to discuss is the issue identified by this court in its remand decision. Namely, whether Cruz Ramos' affidavit and his affidavit alone could support a basis for suppression and thus requiring a further hearing. The board issued a decision saying that the affidavit was not sufficient to warrant a further hearing. That decision is fully consistent with the case law of this court. What's the analysis, though? What was the board's analysis? The board analyzed the statements in the affidavit and determined that it was merely allegations. There wasn't sufficient facts. The affidavit- I'm not sure that, I mean, you can allege facts. The fact that something's an allegation doesn't mean that it's not a fact. No, but for example, he said that he just, in his opinion, he was pulled over because he and his passengers were Hispanic. And if you compare his affidavit with the affidavit in Almeda, you can see that they are very similar. There, this court held that even though there was no basis for the stop of Almeda, it was not an agree, Almeda failed to make a prima facie case because his affidavit was there were no facts, and it was just his intuition that he was stopped because of his race. He even failed to allege that he was of perceived Hispanic ancestry. Cruz Ramos, yes. There's nothing in the affidavit that suggests that- No, I meant Almeda, or am I misremembering that case? In that case, Almeda and two other individuals, I believe, were walking late at night into a parking lot of a gas station where a uniformed border patrol officer saw them and stopped them and asked for their identification. And so, in that case, Almeda alleged that he was stopped solely because of his race. Here, we don't even have the allegation that the border patrol agent saw anyone in the car to know what their ethnicity was. Well, didn't they see that they were looking out the window or looking backward? I mean, if you see people looking backward, I guess you'd see what they look like, wouldn't you? Well, as your Honor said, in the previous decision, this court said that we can only rely on the affidavit itself. We can't rely on the I-213 in adjudicating the motion to suppress. So the only thing we're looking at at this very threshold stage is his affidavit. I was wondering about that. Wouldn't you want to look at the I-213? I mean, I'm just thinking what's a reasonable process. Look to the I-213, not for the truth of what is in there, but what should be in a petitioner's affidavit in order to get a hearing. I mean, he needs to take issue with what the government's presentation is in order to know, so the immigration judge knows we need to go into this more carefully. And that is the concern with the affidavit is there's just, there's so few facts to let the immigration judge or the board know what happened. And- But your adversary says that's why you need a hearing. Well, but this court has specifically laid out a process along with the board that the alien must meet a threshold before a hearing can happen because otherwise we would have a hearing, as you said, every single time an alien alleges that- How burdensome is that? These are supposed to be very expeditious. Is it appeal from the IJ's ruling to the BIA permitted here? Or would the suppression or non-suppression simply determine the outcome? The issue would be appealable to the board as it was in this case. Even if the hearing is expeditious, it can result in a year or two of delay, assuming the BIA becomes more efficient than it is. Correct, it could take some time, and that's why this court set up the process of requiring an affidavit first to meet a minimum threshold. And then if that threshold has been met, a full hearing, at which point the IJ determines whether a prima facie case has been met. At which point, then the government can put on its evidence to justify the manner in which the stop occurred. And- Why isn't there enough here when he says, I don't believe I violated any traffic laws. I was just driving and I was stopped and I believe it was because of my race. What else could, what else is he in a position to put into an affidavit? Well, he, for one, I mean, he could indicate that the officers were aware of his ethnicity. That's not in here. And again, I would point to Almeda where- How would he have personal knowledge? I mean, if he had seen the car before it pulled over, because in his affidavit he says that the car was behind him and pulled him over. So, well, Your Honor, it is, again, his burden- I'm very rarely, have any idea what the ethnicity is of whoever's driving behind me. That is correct. Or vice versa. Well, and that is the issue, because he has to allege that the, or he has to demonstrate some evidence that the stop was based on an impermissible characteristic. In this case, his race. It could also be based on things that are said by the border patrol agent after the stop. Correct, and that would be the Santos decision where this court did find an affidavit met the threshold level for a further hearing. And none of that abusive language in Santos occurred here. There were no derogatory comments about immigrants or whatnot. The officer just simply asked for identification as is normal in any stop. This court has very clearly laid out the requirements for what, for how these process works. And in Almeda, it demonstrated that there must be some factual basis beyond just the intuition that race played a part. And if there are no further questions, we ask that this court uphold the decision of the board and deny the petition for review. Thank you. We'll hear a rebuttal. Very briefly, in regards to the Almeda-Almeral decision, I would note that that, when you involve a pedestrian as opposed to a vehicle, there are issues about consent that are significantly different for a vehicle stop. And I think that the petitioner's affidavit in this case is sufficient. He does indicate he's Hispanic. He indicates that he believes the border patrol pulled him over for that reason. He doesn't specifically say- There's another point on your side here. This was not close to the border. No, well, no, your honor, unless you're going to swim across Lake Ontario in the fall, probably not anywhere. I mean, technically, it's within 100 miles of the middle of Lake Ontario. Well, 100 miles within the middle of Lake Ontario would be on the shore of Lake Ontario. The closest border point for where he was stopped is- Closest border crossing. Is Buffalo, then, to Canada, your honor. Nowhere near to the southern border. Your honor, I would like to argue some of the other, the factual issues in regards to what else my client could have put in his affidavit. It's not clear to me that he could have put a lot more into his affidavit, but I think that it's really important that individuals like this petitioner have an opportunity for hearing and to develop that record. That would seem to reverse the presumption that there's no hearing unless there's a prima facie case, a reason to, a good reason to suspect that this is a rare instance in which the border patrol has egregiously relied upon a race. Well, your honor, an alien in this particular circumstance who's driving a car can't, is in a mind reader, has no direct knowledge. Yes, but that would say that you have a hearing in every case, which may not be even a bad idea. It's just not, that's not the law. Your honor, I think that the respondent's assertion that the vehicle stop was based on his race, the, without reference to the I-213, is sufficient. In regards to the procedural process and how quickly things move, an individual in this kind of situation has a three hour block of time for their individual hearing, potentially for this individual who's asking for voluntary departure, something that can be done in about a half an hour, sometimes in ten minutes. There's plenty of time at that individual hearing to have an officer testify. They arrange testimony by televideo, they do it any number of other ways. But you have a right, but the petitioner could then go to the BIA to appeal from the outcome of that hearing if it was a burst to him? Certainly, in the same way. And what do you think the delay would be in that, from that part of the process? Well, I don't, see, that's the point, your honor. I don't think in this case there would be anything different, except maybe we would have had facts and maybe I wouldn't actually be here a second time, because we would have had a factual hearing and the court could look at. Was there some other reason that no one knows about because the government has chosen never to offer any facts as to why they stopped the respondent? So not having the hearing may in this case have actually caused part of the additional delay because no one knows why the vehicle was stopped. My client can only say in an affidavit what his actual knowledge is. This doesn't help you in response to the question that I think is bothering my colleagues, although they obviously will speak for themselves. And that is, if this is enough, why isn't it enough in every case? Your Honor, I think it's enough in this case because there's no indication of any other reason. There's no, there's no allegation of- That's precisely the point, really, isn't it? I mean, it's a blank slate, and essentially what we have is your client says, well, I believe it was my ethnicity. Now, I tried very hard to put the case as strongly for your client as I could, but if the proposition that the I-213 is not properly considered in deciding whether he gets a hearing, I take it you don't dispute that, right? First of all, before I finish my sentence. It's law of the case. Yes, I understand. I understand. So if that's true, what else is there? To say that there's nothing to justify the stop doesn't help me on the issue of whether your man's entitled to a hearing. I guess, Your Honor, my point is that an individual should have an opportunity to develop a record, whether through a hearing or the government actually making a factual response in their motion papers. It doesn't seem to be the law, that's the problem. No, Your Honor, but- Suppose your client submitted an affidavit and said, my grandmother was a Serb, and I think that's why he stopped me. That get a hearing? No, Your Honor. Well, how's that different? Well, is the person driving, and there are no other reasons, and they have a particularly Serbian name? Get the name, because your client has offered nothing that would permit us to suppose, I think, that the agent knew his name before the stop. In the absence of an I-213 or the hearing or anything else, he has no way to assert what's within the officer's knowledge, Your Honor, I guess. There's no discovery in immigration court proceedings, there's no- It's every case then, isn't it? I would argue, Your Honor, that it's not every case, that there are actually very few cases where a border patrol officer pulls an alien over in the absence of any other factors. That there's no local law enforcement already pulling the gentleman over because of a speeding ticket or some traffic infraction. That a border patrol officer stopping a vehicle isn't that frequent, that the court should give an individual an opportunity to have a hearing in that kind of case. Because otherwise, the border patrol is free to pull someone over without ever fear of even an inquiry, or even having to come and say to a court why they did it. They then get the benefit of what the Supreme Court told them in Lopo Mendoza that they can't do. You know, obviously, with no local law enforcement, none of that other stuff, he pulled him over because he thought there's a reasonable chance that there were undocumented aliens in the vehicle. One or more. Okay, now what? He obviously did that. If your client had said, I'm very dark complected, and so I think it was race, okay, but we don't have that statement. We were yelling in Spanish out the windows, maybe it's ethnicity. We were flying a Mexican flag from the radio antenna, right? There are a million facts that theoretically could be, and I'm trying very hard to see why there should be a hearing other than disagreement with the policy of no hearings in these cases, no discovery. And I'm not saying I agree or disagree, but other than disagreement with the policy, how do I say there can be a hearing in this case? There must be a hearing in this case. Your Honor, I guess I would say that my client is a person, that he's entitled to a fundamentally fair removal process. That he's entitled to the protections of the Constitution. That includes the protection from having his vehicle stopped for no reason. And that if he can never get to a hearing, because there's no way for him personally, from his own personal knowledge, to say why an officer stopped him. He's gotta have a vehicle to get into that courtroom. If I was- Yeah, but look, he knows why he stopped him, at least part of the reason. He stopped him because he thought there was a reasonable chance there were one or more undocumented aliens in the vehicle. I mean, he wasn't stopping him because he thought they were fishing without a license. He was doing his job. Now, okay, but that doesn't get your guy a hearing unless we change the law. And it's not up to us to change that particular law. So, unless your client alleges something that makes it plausible that it was race, ethnicity, some prohibited factor. I don't know how you divide this case from the millions of other potential cases. And say a hearing here, but not otherwise. Help me. Your Honor, the process that the court set up. Do an affidavit. If you present that affidavit and you make a prima facie claim, at the very least the alien should have an opportunity to testify. If the alien testifies and meets the prima facie after the cross examination by the prosecutor. Then the government has to come forward with their evidence as to why the stop was legal. Forgive me, but that to me doesn't make a lot of practical sense. Because anything your client could possibly say in direct testimony in front of an LAJ, he can say it in an affidavit. That's the process though, Your Honor, from the case law. My client has to do an affidavit, then come to a hearing and give testimony to corroborate his affidavit. Your Honor, I don't know what else my client could have put in an affidavit. Beyond what he did to raise the issue. I don't know what else is within his direct knowledge. And I think that the law should be clear so an individual can have an opportunity to challenge whether the stop is lawful. That his belief that he was stopped on the basis of ethnicity. He has direct knowledge in the sense that he knows what he believes. But he hasn't got any facts. No, Your Honor, but in the context of immigration, he's not entitled to discovery. He's not entitled to any of those things. And I think he's entitled to the protection of the Constitution. I think that he's gotta have an opportunity to get to a courtroom. To have a factual record developed. Thank you. Thank you, Ms. Dobler. Thank you, Mr. OVR. We will reserve decision.